**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 11, 2007
Decided December 19, 2007

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 07-1338

| | |
|---|---|
| LINDA D. HISLE,<br>     *Plaintiff-Appellant,*<br><br>     *v.*<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br>     *Defendant-Appellee.* | Appeal from the United States<br>District Court for the Southern<br>District of Indiana, Indianapolis<br>Division<br><br>No. 1:05-cv-1125-SEB-VSS<br><br>Sarah Evans Barker,<br>*Judge.* |

**O R D E R**

Linda Hisle applied for Social Security disability benefits, but her claim was rejected when an administrative law judge (ALJ) found that she can perform light work. Hisle advances two main arguments on appeal: first, that the ALJ improperly disbelieved Hisle's testimony about the severity of her impairments; and second, that the ALJ improperly discounted the opinion of an examining psychologist regarding the combined effect of Hisle's physical and psychological impairments on her ability to work. Because we agree with the district court that the ALJ's finding was supported by substantial evidence and he committed no legal error in reaching it, we affirm.

**I**

Numerous doctors have examined Hisle over the last six years, but only two of them are relevant at this point. The first is Dr. Tung Nguyen, Hisle's treating physician. In February 2002 Dr. Nguyen reported that Hisle had "[m]oderate restrictions, but with an ability to perform most activities of daily living and occupation." In May of the same year, Dr. Nguyen reaffirmed that Hisle was able to work, although her lifting ability was limited to less than fifteen pounds. But later that month, Dr. Nguyen issued a third, contrasting opinion that Hisle had "[m]arked restrictions, with an inability to perform most activities of daily living and occupation." He did not provide any explanation for this seemingly sudden loss of ability.

The second person is Dr. David McIntosh, an examining psychologist who evaluated Hisle in 2002. Dr. McIntosh concluded that Hisle's anxiety and depression, in combination with her physical impairments, would "make it difficult for her [to] concentrate on work-related activities" and thus she would need frequent breaks, an abbreviated workday, and a solitary workspace.

The ALJ found that Hisle's impairments, though severe, did not meet or equal any listed impairment and that she retained the residual functional capacity to work. 20 C.F.R. § 404.1520, 404.1545. The ALJ relied upon the testimony of a vocational expert who described over 100,000 light- and sedentary-level jobs in the national economy that Hisle could perform. 20 C.F.R. §§ 404.1567, 416.967. Moreover, the ALJ did not find credible Hisle's testimony that her impairments, individually or in combination, were so severe that they prevented her from engaging in *any* substantial gainful activity. He explained that Hisle's testimony about her loss of hearing, loss of the use of her right hand, and her inability to work were not supported by the objective medical evidence, her success in a vocational training program, and her "wide range" of daily activities.

The ALJ also decided not to credit certain medical conclusions. For example, the ALJ accepted Dr. McIntosh's diagnoses of psychological impairment (anxiety and depression) but rejected Dr. McIntosh's analysis of Hisle's functional limitations for two reasons. First, the ALJ observed that Dr. McIntosh's opinion was inconsistent with Dr. Nguyen's first two opinions to the effect that Hisle could work, as well as Hisle's history of successful vocational training and "active[ ] participat[ion] in efforts to find employment." Second, the ALJ discounted Dr. McIntosh's opinion to the extent that it relied on his own evaluation of her physical condition, because this part of his evaluation fell outside his areas of expertise. Additionally, the ALJ rejected the third of Dr. Nguyen's opinions (reporting

"[m]arked restrictions") because "[t]here is no explanation for this sudden decrease in functional capacity in such a short period of time."

The Appeals Council denied Hisle's subsequent request for review, making the ALJ's decision the final decision of the Commissioner. See 20 C.F.R. § 404.981; *Scott v. Barnhart*, 297 F.3d 589, 593 n.4 (7th Cir. 2002). The district court affirmed the Commissioner's final decision.

## II

This court will reverse an ALJ's denial of disability benefits only if the decision is not supported by substantial evidence or it is based on an error of law. 42 U.S.C. § 405(g); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007); *Rice v. Barnhart*, 384 F.3d 363, 368-69 (7th Cir. 2004). Substantial evidence supports the decision if, in light of the entire record, a reasonable person could conclude that the decision was correct. See *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Rice*, 384 F.3d at 369. This court will not reweigh evidence, resolve conflicts anew, determine credibility, or impose its judgment in place of the Commissioner. *Rice*, 384 F.3d at 369; *Powers v. Apfel*, 207 F.3d 431, 434-35 (7th Cir. 2000).

Hisle's first argument on appeal is that the ALJ should have accepted Dr. McIntosh's evaluation of the aggravating effects of her psychological impairments on her physical impairments. In evaluating evidence of disability, the ALJ must consider "the *aggregate* effect of [the] entire constellation of ailments—including those impairments that in isolation are not severe." *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) (emphasis in original) (citing 20 C.F.R. § 404.1523); see *Mendez v. Barnhart*, 439 F.3d 360, 363 (7th Cir. 2006); *Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005). Accordingly, a medical report that offers a physical assessment but fails to consider potentially aggravating psychological impairments cannot alone provide substantial evidence of a claimant's ability to work. See *Beecher v. Heckler*, 756 F.2d 693, 695 (9th Cir. 1985); *Dressel v. Califano*, 558 F.2d 504, 508 (8th Cir. 1977). And this court has previously held that an ALJ must consider psychiatric problems that may exacerbate a claimant's underlying physical impairments. See *Gentle*, 430 F.3d at 868-69.

The ALJ adhered to these principles. Contrary to Hisle's argument, the ALJ did not refuse to consider the combined effects of Hisle's physical and psychological impairments. See *Mendez*, 439 F.3d at 363; *Gentle*, 430 F.3d at 868. Rather, after considering Dr. McIntosh's opinion that the combined effects of her impairments severely limited her, the ALJ merely chose to discount that portion of the opinion because it did not square with other substantial evidence in the record of the combined effects of her impairments, including (1) Hisle's ability successfully to complete a vocational internship; (2) her ability to search aggressively for

employment; (3) Dr. Nguyen's appraisal of her physical capabilities; and (4) Hisle's own testimony of her abilities with respect to daily activities and chores. Additionally, at her hearing Hisle stated that she was handling her anxiety and depression "pretty good" and that these impairments were not major issues for her. Because the ALJ explicitly considered Hisle's psychological and physical impairments in combination before concluding that Dr. McIntosh's assessment overstated her limitations, see *Mendez*, 439 F.3d at 363; *Golembiewski*, 322 F.3d at 918, there is no reversible error. See 20 C.F.R. § 404.1523, 404.1527; *Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004).

Hisle also argues that the ALJ erred by discounting Dr. McIntosh's opinion to the extent that it is based on his independent evaluation of Hisle's physical condition. But Dr. McIntosh did not explain the basis upon which he, a psychologist, assessed Hisle as having "physical problems." Without knowing the basis for Dr. McIntosh's assessment of physical problems, the ALJ was permitted to discount its weight. See *Rice*, 384 F.3d at 371 ("medical opinions upon which an ALJ should rely need to be based on objective observations and not amount merely to a recitation of a claimant's subjective complaints").

Hisle next argues that the ALJ erred in finding not credible her own testimony describing the impact of her impairments on her ability to work. This court defers to the credibility determination of an ALJ and will reverse on that ground only if the assessment was "patently wrong." *Powers*, 207 F.3d at 435. Nothing in this record suggests such a fundamental problem with the ALJ's credibility assessment. Numerous medical professionals attested to Hisle's ability to perform light work despite her impairments. Moreover, the ALJ found that Hisle's claim that her right hand was "practically useless" because of carpal tunnel syndrome was inconsistent with the positive results of her vocational training, which included data entry, calculator use, and filing without any problems, and an independent medical finding of "normal gross and fine finger manipulative ability." Similarly, Hisle's claim of severe hearing loss clashed with an audiogram demonstrating only mild to moderate hearing loss in only one ear, as well as the ALJ's personal observations while questioning Hisle.

Hisle's remaining arguments share a common theme—that because the ALJ did not address a specific piece of evidence in his decision, he must have ignored it altogether. She argues that (1) the ALJ failed to consider her depression and anxiety in combination with her other impairments; (2) the ALJ ignored the possibility of economic hardship before inferring from Hisle's refusal to pursue certain treatments that her symptoms were not severe; (3) the ALJ failed to consider her persistence and pace in performing the tasks required by employers; and (4) the ALJ failed to consider her obesity in combination with her other limitations.

        This court has long held that an ALJ is not required "to provide a complete written evaluation of every piece of testimony and evidence." *Rice*, 384 F.3d at 370 (quotation and citation omitted). Even if that were not the rule, the ALJ here *explicitly* considered much of the evidence that Hisle complains was ignored, and nothing suggests that he did not take all of it into account. For example, the ALJ's decision analyzes the interplay between her physical and psychological impairments "in combination." Likewise, the decision twice acknowledges the possibility that Hisle may have refused desired treatment for financial reasons. And the ALJ specifically found that Hisle has "difficulties in maintaining concentration, persistence, or pace," although these difficulties are not so severe as to preclude light work.

        Hisle's obesity argument fares no better. An ALJ must consider any limiting effects of obesity on a claimant's overall condition even if the claimant does not cite obesity as an impairment (and Hisle did not, although she meets the body mass index threshold for obesity). *Prochaska v. Barnhart*, 454 F.3d 731, 736-37 (7th Cir. 2006); *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000). But the claimant must articulate how her obesity limits her functioning and exacerbates her impairments. See *Prochaska*, 454 F.3d at 736-37; *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). Hisle did not explain how her obesity affects her ability to work other than to suggest that it generally exacerbates her impairments. This court has repeatedly excused the harmless error of an ALJ who fails to explicitly address a claimant's obesity but arrives at a final decision after reviewing the medical opinions of physicians familiar with the claimant's obesity. See *Prochaska*, 454 F.3d at 736-37; *Skarbek*, 390 F.3d at 504. Because that is the case here, this claim of error must fail as well.

        For the foregoing reasons, we AFFIRM the decision of the district court.