**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance
with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit
Chicago, Illinois 60604**

Submitted January 18, 2008[*]
Decided January 22, 2008

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. JOEL M. FLAUM, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 07-2979

| | |
|---|---|
| LYNNE M. MILLION, | Appeal from the United States |
|     *Plaintiff-Appellant,* | District Court for the Northern |
| | District of Indiana, South Bend |
| *v.* | Division |
| | |
| MICHAEL J. ASTRUE, | No. 3:06-CV-746 CAN |
| Commissioner of Social Security, | |
|     *Defendant-Appellee.* | Christopher H. Nuechterlein, |
| | *Magistrate Judge* |

**O R D E R**

Lynn Million applied for Disability Insurance Benefits claiming that she could not work because she suffers from mental illness, headaches, sinus problems, and back and neck pain. An administrative law judge conducted two hearings, continuing the first hearing to obtain additional medical records. The ALJ found that Million was not disabled on or before March 31, 1984—the date she was last insured, which is the relevant time period for purposes of DIB eligibility. 20 C.F.R.

---

[*]After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2).

§§ 404.131, 404.315(a)(1).  The Social Security Appeals Council denied Million's request for review.  A magistrate judge, sitting by consent of the parties, then affirmed, holding that the ALJ's decision was supported by substantial evidence.  Million now appeals, and we also affirm.

Proceeding pro se at the hearings before the ALJ, Million provided testimonial and documentary evidence to support her claim.  She stated that she had family problems as a child, began psychological treatment at an early age, has battled depression most of her life, and is often suicidal.  She testified that she often skipped school and that her parents pushed her into a marriage when she was 16 years old.  Million also said that her ex-husband physically abused her, and that she experienced headaches and a curved coccyx (tailbone) as a result of the abuse.  She then testified to medical problems occurring after her insurance expired, including numerous problems resulting from a car accident in 1999, such as degenerative disk syndrome and fibromyalgia.  She maintained that at the time of the hearing she could not work because she experiences pain in her neck when looking up, lifting, driving, or sitting at a computer, and must often spend up to a week in bed due to pain and fibromyalgia.

Million also described her educational and work history.  She received her GED in 1980 and a bachelor's degree in 1998, attending school full-time for part of her undergraduate work.  Although she has held several different part-time jobs, she did not testify to any significant work experience before March 1984.  Million stated that her current source of income consisted only of Social Security Insurance benefits, which she has received since 1992.

Million provided medical evidence documenting her physical and mental health; however, very little of it was pertinent to the relevant period.  At the first hearing, the ALJ asked for the names of doctors that might have records supporting Million's claim from the relevant period before 1984 and granted a continuance to obtain those records.  Although Million and the ALJ were unsuccessful in obtaining more records from the doctors, some documents were found in a file containing one of Million's previous applications for Social Security benefits.  Records in that file from 1974 show that Million, who was then 16 years old, received family counseling to "help the process of communication among family members."  The records further show that, at first, Million appeared to her social worker to be "obstinate," but after some sessions became "much better at home" and "much more cooperative."  The family cancelled therapy after three months because of Million's improvements.  The records do not show whether Million was diagnosed with any medical or psychological impairments.  Other records in the Social Security file show that, four years later, Million attended one treatment session with her husband that was ordered by a judge as a result of his legal troubles, yet they did not receive a

treatment plan because her husband refused further mental health treatment. Again, there is no record of a formal medical or psychological diagnosis.

The only other medical records offered for the insured period come from a 1982 doctor visit for persistent headaches. Records indicate that Million's CT scan and neurological work-up were negative, and that her headaches were on a "tension and stress" basis. Several possible treatment courses were recommended, but it is unclear what treatment, if any, Million received. The records do not show whether her pain limited her ability to work or function in any way. Finally, at the time Million filed the application currently under review, the SSA required her to consult with a psychologist and physician, and they found that there was insufficient evidence to determine whether she had a severe mental or physical impairment at the time she was insured.

After considering the proffered evidence, the ALJ applied the five-step analysis described in 20 C.F.R. § 404.1520(a)(4)(i)-(v) to conclude that Million was not disabled through the last date insured. In so doing, the ALJ determined that she had not engaged in substantial gainful employment during the relevant time period (step one); that her headaches constituted a severe physical impairment but that she had no severe mental impairments through the date insured (step two); and that her headaches did not qualify as any listed impairment (step three). The ALJ placed particular emphasis on the absence of medical records corroborating her reports of severe mental illness to conclude that Million's testimony regarding her pain and limitations was not credible. The ALJ then concluded that it is unclear whether Million had any past relevant work during the insured period (step four), and that, in any event, she could perform the full range of medium work through the date last insured and that there are jobs in the national economy that she can perform (step five). Because the Social Security Appeals Council denied Million's request for review, the ALJ's decision is the final decision of the Commissioner of Social Security. *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

On appeal, Million argues that the ALJ failed to obtain a valid waiver of counsel and therefore was under a heightened duty to develop the record, which the ALJ failed to do adequately. Million also argues that the ALJ's determination that she was not disabled at any time through March 31, 1984, and could perform jobs in the national economy was not supported by substantial evidence.

Million first argues that the ALJ failed to obtain a valid waiver of counsel. An applicant has a statutory right to be represented by counsel, *see* 42 U.S.C. § 406, but the right may be waived if the ALJ obtains a valid waiver. *Skinner*, 478 F.3d at 841. To obtain a valid waiver, an ALJ must explain to the claimant "(1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingent arrangement, and (3) the limitation on attorney fees to 25 percent of

past due benefits and required court approval of the fees." *Id.* (internal citation and quotation marks omitted). If the ALJ fails to obtain a valid waiver of counsel, his duty to develop the record is heightened, and he must "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." *Id.* at 841- 42 (quoting *Smith v. Sec. of Health, Educ. and Welfare*, 587 F.2d 857, 860 (7th Cir. 1978)). Further, if no valid waiver is obtained, the burden is then on the Commissioner to show that the ALJ adequately developed the record, and there is no presumption that the claimant has presented his or her best case before the ALJ. *Id.* at 842. Nonetheless, a "significant omission" is usually required before we will find that the ALJ failed to fully develop the record. *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994).

Here, the ALJ did not obtain a valid waiver of counsel from Million. The ALJ informed Million that she could be represented if she so desired and that any fee charged by an attorney would have to be approved by Social Security. Nonetheless, he failed to inform her of the possibility of free counsel or counsel available on contingency, the limits on fees, or the manner in which an attorney can aid the proceedings. Thus, the ALJ had a heightened duty to develop the record. *Skinner*, 478 F.3d at 841.

The Commissioner has met the burden of showing that the ALJ satisfied its heightened duty to develop the record. The ALJ not only had extensive discussions with Million regarding the availability of medical records from the insured period, but also offered to work with Million to obtain whatever records were available and continued the hearing to allow time to do so. Moreover, the ALJ discussed Million's past and present medical and psychological problems, family problems, and medical treatment at great length. Although the ALJ failed to obtain every single record from the relevant period, Million herself acknowledged the difficulty in obtaining the 30-year-old records, and at no point did she indicate how the missing records might support her case or how she was prejudiced by their absence. *See Schoenfeld v. Apfel*, 237 F.3d 788, 798 (7th Cir. 2001) ("'Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand.'" (quoting *Binion v. Shalala,* 13 F.3d 243, 246 (7th Cir. 1994))). In her appellate brief, Million explains how this court can obtain additional medical records that the ALJ did not locate. The function of this court, however, is not to develop the factual record but to review the ALJ's findings. Any information regarding the whereabouts or availability of medical records from the insured period should have been provided to the ALJ at the time he reviewed her application.

Turning to Million's primary argument, we review the ALJ's decision to determine whether it is supported by substantial evidence. 42 U.S.C. § 405(g); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Substantial evidence means

"'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Skinner*, 478 F.3d at 841 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Although we may not substitute our judgment for that of the ALJ, the ALJ must, at the very least, minimally articulate the analysis of the evidence with enough detail and clarity to permit meaningful appellate review. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

As the ALJ pointed out, Million provided, and the record contains, an abundance of medical information and documents, though very little of it pertains to the insured period. Records from medical treatment that took place after Million's last date insured, March 1984, are relevant only to the degree that they shed light on her impairments and disabilities from the relevant insured period. All the other records that Million provides, such as the evidence of her 1999 car accident and resulting medical care, are not relevant to the determination of her disability benefits. *See Meredith v. Bowen*, 833 F.2d 650, 655 (7th Cir. 1987) ("While we sympathize with the claimant and her physical problems and we realize that she was diagnosed as totally disabled . . . in 1984, these diagnoses simply are not relevant to her physical condition some eleven years earlier when her insured status expired.").

The three medical reports concerning the relevant period, however, support the ALJ's determination that Million had no severe mental impairments and that her headaches did not qualify her as "disabled" under the Social Security Act. None of the records show that Million was diagnosed with any psychological impairment or disability, and they give no reason to believe that Million was severely limited in any daily or work activity. *See* 20 C.F.R. § 404.1521(a) (a severe impairment is one that significantly limits an individual's ability to perform basic work activities). The medical records regarding her headaches do not corroborate her testimony that they were debilitating, as they were described by the doctor as being "stress" or "tension" related and did not create any severe limitations on her ability to work. *See* 20 C.F.R. § 404.1508 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms."); *see also Skarbek v. Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004) (affirming ALJ's finding that petitioner's "testimony of constant throbbing pain was not consistent with the finds of the specialists or with [his] medical records"). Given the absence of evidence supporting Million's claim that she was disabled during the insured period, the ALJ's determination that Million was not disabled was supported by substantial evidence.

AFFIRMED